IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01264–EWN–CBS

KEITH L. MASON and
JONATHAN W. O'TOOLE,

      Plaintiffs,

v.

JOHN U. TREFNY, in his official capacity as President
of the COLORADO SCHOOL OF MINES;
RICHARD M. BOYD, in his official capacity as Chief
of the COLORADO SCHOOL OF MINES
DEPARTMENT OF PUBLIC SAFETY; and
BRETT STANLEY, individually and in his official
capacity as an officer of the COLORADO SCHOOL
OF MINES DEPARTMENT OF PUBLIC SAFETY,

      Defendants.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a civil rights case arising under 42 U.S.C. § 1983 (2006).  Plaintiffs Keith L.

Mason and Jonathan W. O'Toole allege that Defendants John U. Trefny — in his official capacity

as President of the Colorado School of Mines, Richard M. Boyd — in his official capacity as

Chief of the Colorado School of Mines Department of Public Safety, and Brett Stanley — in his

individual and official capacity as an officer of the Colorado School of Mines Department of

Public Safety: (1) infringed on Plaintiffs' first amendment rights in violation of 42 U.S.C. § 1983; (2) infringed on Plaintiffs' Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; and (3) falsely arrested Plaintiffs.  Additionally, Plaintiffs seek a declaratory judgment and permanent injunctive relief.  This matter is before the court on "Defendants' Motion to Dismiss," filed August 17, 2005.

## FACTS

### 1.      *Factual Background*

The following facts are taken from Plaintiffs' complaint.  Defendant John U. Trefny is the President of the Colorado School of Mines ("School of Mines") in Golden, Colorado.  (Compl. For Declaratory J., Permanent Injunctive Relief and Damages ¶ 13 [filed July 8, 2005] [hereinafter "Compl."].)  The School of Mines is a public university devoted to engineering and applied science.  (*Id.* ¶ 15.)  Defendant Richard M. Boyd is the Chief of the School of Mines police department.  (*Id.* ¶ 16.)  Defendant Brett Stanley is an officer employed by the School of Mines police department.  (*Id.* ¶ 18.)  Defendant Boyd supervised Defendant Stanley.  (*Id.* ¶ 16.)

The School of Mines official student handbook is called the "Brunton."  (*Id.* ¶ 20.)  The 2004–2005 version of the Brunton contained a section entitled "Campus Rules & Regulations." (*Id.*)  This section states that "distribution of literature and solicitation 'must have prior approval from the appropriate office' and distribution of items that 'take place within the Student center or surrounding areas must be approved through the Office of Student Life.'"  (*Id.*)

Plaintiffs are Christians who travel to various locations around the country to express their pro-life views and pass out leaflets about such views.  (*Id.* ¶ 22.)  At or around noon on Friday

March 26, 2004, Plaintiffs were standing on a public sidewalk at the intersection of 16th and

Maple street, near the School of Mines, in Golden, Colorado.  (*Id.* ¶ 23.)  Plaintiffs were

participating in a pro-life, anti-abortion demonstration including: (1) holding display signs which

expressed pro-life and anti-abortion messages; and (2) distributing leaflets to passersby which

contained a pro-life and anti-abortion message.  (*Id.* ¶ 24.)  At some time during this

demonstration, Defendant Stanley received a telephone call from an anonymous person regarding

this anti-abortion demonstration.  (*Id.* ¶ 25.)  Thereafter, Defendant Stanley called Defendant

Boyd for instructions regarding how to handle this particular demonstration.  (*Id.* ¶ 26.)

Defendant Boyd advised Defendant Stanley that if Plaintiffs had not obtained a permit, Defendant

Stanley should order Plaintiffs to leave the premises.  (*Id.* ¶ 27.)  Defendant Stanley determined

that Plaintiff Mason had not obtained a permit and ordered Plaintiff Mason to cease all further

activities on the premises.  (*Id.* ¶ 28.)  Plaintiff Mason alleges that when he "advised Defendant []

Stanley that he . . . was lawfully engaged in protected First Amendment speech activities in a

public forum where he had a right to be, Defendant [] Stanley arrested him for 'obstruction and

possibly trespass.'"  (*Id.* ¶ 29.)

Plaintiff O'Toole contends that he proceeded to collect his signs and literature in

preparation to leave the premises following Plaintiff Mason's arrest.  (*Id.* ¶ 31.)  Plaintiff O'Toole

contends that he told Defendant Stanley he was preparing to leave the premises.  (*Id.* ¶ 32.)

Plaintiff O'Toole asserts that he began to walk toward his automobile and Defendant Stanley

asked him for identification.  (*Id.* ¶¶ 35–36.)  Plaintiff O'Toole refused to give Defendant Stanley

his identification.  (*Id.* ¶ 36.)  Plaintiff O'Toole proceeded to walk away and Defendant Stanley

arrested him.  (*Id.* ¶¶ 37–38.)  Thereafter, Defendant Stanley transported Plaintiffs Mason and

O'Toole to the Golden, Colorado police department and charged them with obstructing a peace

officer.  (*Id.* ¶ 44.)  The District Attorney later dismissed the pending criminal charges against

Plaintiffs.  (*Id.* ¶ 45.)

**2.      *Procedural History***

On July 8, 2005, Plaintiffs filed a complaint in this court.  (*Id.*)  Plaintiffs asserted claims

for: (1) deprivation of First Amendment right to free speech in violation of 42 U.S.C. § 1983; (2)

deprivation of Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; (3)

false arrest; (4) declaratory judgment; and (5) permanent injunctive relief.  (*Id.* ¶¶ 47–65.)

On August 17, 2005, Defendants Trefny, Boyd, and Stanley filed a motion to dismiss.

(Defs.' Mot. to Dismiss [filed Aug. 17, 2005] [hereinafter "Defs.' Br."].)  Defendants contend

that: (1) the Eleventh Amendment bars claims for money damages against Defendants Trefny and

Boyd in their official capacity; (2) Defendants Trefny and Boyd do not qualify as persons for

purposes of section 1983; (3) the claims against Defendant Trefny must be dismissed because

Plaintiffs fail to allege any personal participation; and (4) Defendant Stanley is entitled to qualified

immunity as to the first and second claims for relief.  (*Id.* at 2–8.)  On August 31, 2005, Plaintiffs

filed a response to Defendants' motion to dismiss.  (Resp. to Mot. to Dismiss [filed Aug. 31,

2005] [hereinafter "Pls.' Resp."].)  Plaintiffs confessed their third claim for relief as to all

Defendants.  (*Id.* at 15.)  Additionally, Plaintiffs clarified that they were not asserting their first

two claims for relief against Defendants Trefny and Boyd in their official capacities.  (*Id.* at 7–8.)

On September 27, 2005, Defendants filed a reply in support of their motion to dismiss.  (Defs.'
Reply to Pls.' Resp. to Defs.' Mot. to Dismiss [filed Sept. 27, 2005] [hereinafter "Defs.' Reply"].)

# ANALYSIS

## 1.    Standard of Review

Defendants move to dismiss Plaintiffs' first three claims for relief under Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6).  Federal Rule of Civil Procedure 12(b)(1) provides that a
defendant may move the court to dismiss the claim for "lack of jurisdiction over the subject
matter."  (2004).  When a defendant challenges subject matter jurisdiction, the plaintiff must
establish such jurisdiction by a preponderance of the evidence.  *New Mexicans for Bill
Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).  Unlike a Rule 12(b)(6) motion, a
motion under Rule 12(b)(1) "can include references to evidence extraneous to the complaint
without converting it to a Rule 56 motion."  *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th
Cir. 1987).  Indeed, the court has "wide discretion to allow affidavits, documents and even a
limited evidentiary hearing to resolve disputed jurisdictional facts under 12(b)(1)."  *Id.*

For the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a
court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in
support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the
complaint as true and construing them in the light most favorable to the plaintiff."  *Dubbs v. Head
Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d
1215, 1224 [10th Cir.1997]).  "The court's function on a Rule 12(b)(6) motion is not to weigh

potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir.1999]).  This pleading standard is not altered if the defendants raise a qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *Currier v. Doran*, 242 F.3d 905, 911 (10th Cir. 2001). Accordingly, a plaintiff alleging a violation of section 1983 must only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence Unit*, 507 U.S. 163, 168 (1993).

## 2.   *Evaluation of Claims*

Plaintiffs assert their five claims for relief against all Defendants in their official capacities. Additionally, Plaintiffs assert their claims against Defendant Stanley in his individual and official capacity.  Plaintiffs' first three claims for relief seek monetary damages from Defendants for false arrest and violations of section 1983.  (Compl. ¶¶ 47–61.)  Plaintiffs seek injunctive relief against all Defendants for their last two claims — declaratory relief and permanent injunctive relief.  (*Id.* ¶¶ 62–65.)

Plaintiffs concede that their first three claims for relief, seeking monetary damages against Defendant Trefny and Boyd in their official capacities are inappropriate.  (Pls.' Resp. at 7.) Specifically, Plaintiffs assert that "[t]hough [their] [c]omplaint may be inartfully [sic] drafted," they are only seeking injunctive relief against these Defendants in their official capacity.  (*Id.* at 7.) As stated above, Plaintiffs do not assert these three claims against Defendants Trefny and Boyd in

their individual capacities.[1]  Thus, Plaintiffs' section 1983 claims and false arrest claims against

Defendants Trefny and Boyd must be dismissed.  Additionally, Plaintiffs confessed their third

claim for relief with respect to all Defendants.  (Pls.' Resp. at 15.)  Thus, the only remaining

claims before this court are Plaintiffs': (1) first claim for relief alleging a deprivation of their First

Amendment rights in violation of section 1983 against Defendant Stanley; (2) second claim for

relief alleging a deprivation of their Fourth and Fourteenth Amendment rights in violation of

section 1983 against Defendant Stanley; (3) fourth claim for relief seeking a declaratory judgment;

and (4) fifth claim for relief seeking permanent injunctive relief.  Defendants' motion to dismiss

does not address Plaintiffs' fourth and fifth claims for relief.  Thus, I evaluate Plaintiffs' first and

second claims for relief with respect to Defendant Stanley below.

Defendants contend Plaintiffs' section 1983 claim against Defendant Stanley must be

dismissed because based on Plaintiffs' complaint, Defendant Stanley is entitled to qualified

immunity.  (Defs.' Br. at 5–6.)  Section 1983 provides that:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . .

---

[1]In their response to Defendants' motion to dismiss, Plaintiffs contend that Defendants
Boyd and Stanley "have been sued in their individual capacities for violations of clearly
established rights."  (Pls.' Resp. at 8–15.)  Plaintiffs' complaint only asserts claims against
Defendant Boyd in his official capacity.  (Compl., *passim*.)  Thus, despite Plaintiffs' assertions in
their response to Defendants' motion to dismiss, I only evaluate the claims as against Defendant
Boyd in his official capacity.

42 U.S.C. § 1983 (2006).  To establish a claim under section 1983, a plaintiff must establish (1) a deprivation of a federal or constitutional right by (2) a person acting under color of state law.[2] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  Section 1983 allows a plaintiff to seek money damages from government officials who have violated his or her constitutional rights. *Galletta v. Deasy*, 9 Fed. Appx. 909, 911 (10th Cir. 2001).  Government officials performing discretionary functions are generally granted qualified immunity and are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]).  A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Id.* at 611.  If there is not a constitutional violation, then the defendants must prevail and there is no necessity for further inquiries concerning qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  On the other hand, if the facts (viewed in a light most favorable to Plaintiffs) show a violation of a constitutional right, then I must determine whether that right was clearly established. *Id.*  I evaluate Defendant Stanley's request for qualified immunity in light of Plaintiffs' claims for relief under the First, Fourth, and Fourteenth Amendments.

---

[2]The parties do not dispute that Defendant Stanley is a person acting under color of state law.

a.      **First Amendment Violation**

Plaintiffs' first claim for relief alleges that Defendant Stanley deprived Plaintiffs of their First Amendment right in violation of section 1983.  (Compl. ¶¶ 47–54.)  Plaintiffs allege the campus regulations stated that "distribution of literature and solicitation 'must have prior approval from the appropriate office' and distribution of items that 'take place within the Student center or surrounding areas must be approved through the office of student life."  (Compl. ¶ 20.)  Plaintiffs vociferously argue that this permit scheme is a prior restraint upon Plaintiffs' rights of freedom of speech because "the permit policy promulgated and implemented by the [D]efendants is an unconstitutional prior restraint and gives unfettered discretion to public officials.  Consequently, there was no need for Plaintiffs to apply and be turned down before asserting their protected constitutional rights."  (Pls.' Resp. at 10.)

The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.  The First Amendment applies not only to legislative enactments, but also to less formal governmental acts, such as city policies.  *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999).  The government need not permit all forms of speech on property it owns and controls.  *Id.* (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–79 [1992]).  The extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content-neutral.  *Id.*  The Supreme Court has identified three distinct categories of government property: (1) traditional public fora; (2) designated public fora;

and (3) nonpublic fora.  *Id.*  The parties do not dispute that the public sidewalk at issue is a traditional public forum.  (Defs.' Reply at 3.)

Within traditional public fora, the appropriate First Amendment standard depends on whether a restriction on speech is content-based or content-neutral.  *Wells v. City and County of Denver*, 257 F.3d 1132, 1144–45 (10th Cir. 2001).  Content-based restrictions must survive strict scrutiny.  *Id.* at 1145.  Content-neutral time, place, and manner restrictions are constitutional provided they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communications."  *Id.*  The government can place restrictions on speech in traditional public fora "so long as it does not regulate what is said, but merely regulates such matters as when, where, and how loud."  *Faustin v. City and County of Denver, CO.*, 423 F.3d 1192, 1200 (10th Cir. 2005).  Here, Plaintiffs do not allege that the permit scheme was content-based or that the application process was based on the content or viewpoint of the message Plaintiffs sought to express.  (Compl., *passim*.)  Instead, Plaintiffs assert that the process of seeking a permit and the permit policy is a violation of Plaintiffs' freedom of speech under the First Amendment.  (Pls.' Resp. at 10.)  Plaintiffs essentially argue that the permit scheme is not a content-neutral regulation.

Regulations governing the use of public property for free expression are not *per se* inconsistent with civil liberties.  *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1258 (10th Cir. 2004).  "Permitting schemes are necessary to ensure that scarce space is allocated among conflicting applicants, to protect public access to thoroughfares and public facilities, and to enable police, fire, and other public safety officials to function."  *Id.*  Again, these

regulations must be narrowly tailored to serve a substantial governmental interest. *Id.* As stated above, the regulation at issue is content-neutral and Plaintiffs do not allege otherwise. Thus, my consideration is guided by the requirements outlined in *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002), wherein the Supreme Court evaluated content-neutral permit schemes. The inquiry must focus on whether the regulation: "(1) possesses adequate standards to guide the exercise of official discretion and make possible meaningful judicial review; and (2) [is] narrowly tailored to a significant state interest while leaving open satisfactory alternative means of communication." *Id.* at 323. Accepting the factual allegations in the complaint as true, as I must, Plaintiffs sufficiently pled facts to suggest that the campus regulations violates these requirements. (Compl. ¶¶ 20–21, 63–65.) Specifically, Plaintiffs alleged that the campus regulations "will impermissibly lead to arbitrary enforcement and the prior restraint of protected First Amendment speech." (*Id.* ¶¶ 21, 63–65.) Thus, Plaintiffs have sufficiently pled a first amendment violation.

Next, in evaluating Defendant Stanley's qualified immunity defense, I must determine whether the allegedly violated right was clearly established. "Clearly established" right for purposes of the qualified immunity defense means that:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). In determining whether a law was clearly

established, a court must rely on the objective reasonableness of an official's conduct as measured by reference to the currently applicable law. *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). If the law at that time was clearly established, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* In this case, the appropriate question is an objective inquiry regarding whether a reasonable officer could have believed that arresting Plaintiffs for failure to secure a permit and refusing to leave the premises was lawful in light of clearly established law.

Here, the uncontested facts demonstrate that the campus procedure required a party to obtain a permit prior to distributing literature. (Compl. ¶ 20.) Plaintiffs did not obtain a permit because they believed the permit process was unconstitutional. (*Id.* ¶ 29.) Under these facts, it was reasonable for Defendant Stanley to order Plaintiffs to evacuate the premises and arrest Plaintiffs for refusing to comply with his order. (*Id.* ¶¶ 28–29.) The unconstitutionality of the campus regulation is not clearly established. Thus, Defendant Stanley is entitled to qualified immunity on Plaintiffs' first claim for relief — deprivation of First Amendment right in violation of section 1983.

      **b.**      ***Fourth and Fourteenth Amendment Violation***

Plaintiffs' second claim for relief alleges that Defendant Stanley deprived Plaintiffs of their Fourth and Fourteenth Amendment rights in violation of section 1983. (Compl. ¶¶ 56–58.) To maintain a claim for false arrest, Plaintiffs must demonstrate that their Fourth Amendment right to be free from unreasonable search and seizure has been violated. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). Under the Fourth Amendment, a warrantless arrest is permissible if

there is "probable cause to believe that the arrestee committed a crime." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). For purposes of the qualified immunity standard, "an officer effecting a warrantless arrest is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Romero*, 45 F.3d at 1476. "'Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 [1991]).

Applying these principles to the instant case and accepting all well pled allegations in the complaint as true, Defendant Stanley had probable cause to arrest Plaintiffs. Plaintiffs allege that they were required to obtain permission to distribute literature, but did not. (Compl. ¶¶ 20, 27.) Plaintiffs assert that "Defendant [] Stanley thereupon telephonically contacted Defendant . . . Boyd for instructions on what to do about these . . . activities." (*Id.* ¶ 26.) Defendant Boyd advised Defendant Stanley that:

> pursuant to the policies of the . . . School of Mines, [Plaintiffs] . . . were required to have obtained a permit from the [] School of Mines in order to engage in such speech activities and that, if no such permit had been issued by the [] School of Mines, Defendant [] Stanley should order [Plaintiffs] to leave the public forum . . .

(*Id.* ¶ 27.) Defendant Stanley then instructed Plaintiffs to leave the premises and subsequently arrested them for failing to follow his instructions. (*Id.* ¶¶ 27–29.) The well pled allegations in

Plaintiffs' complaint indicate that Defendant Stanley had probable cause to arrest Plaintiffs.  Thus,

Plaintiffs have not established a constitutional violation.  Accordingly, Defendant Stanley is

entitled to qualified immunity on Plaintiffs' second claim for relief — deprivation of Fourth and

Fourteenth Amendment rights in violation of section 1983.

*3.*     *Conclusions*

        Based on the foregoing it is therefore

        ORDERED as follows:

        1.      Defendants' motion to dismiss (# 12) is GRANTED.  Plaintiffs' first, second, and

third claims for relief against all Defendants are hereby dismissed with prejudice.

        2.      The court will hold a Final Pretrial Conference commencing at 3:15 o'clock p.m.

on April 4, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th

Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and

counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a

copy of which can be downloaded from the court's web site, specifically

http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template

located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web

addresses should be used to insure that the proper format is observed.

3.      The hearing scheduled for March 24, 2006, is VACATED.

Dated this 23rd day of March, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge